UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ERIC R. CLARK, attorney at law; and CLARK & ASSOCIATES, PLLC,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>JEFFERY J. PODESTA, individually and as the agent of Street Search, LLC; and STREET SEARCH, LLC, a New Jersey limited liability company,<br><br>　　　　　　Defendants. | Case No. 1:15-cv-00008-ELJ-CWD<br><br>**REPORT AND RECOMMENDATION RE: MOTION TO DISMISS (DKT. 20)**<br><br>**and**<br><br>**ORDER RE: MOTION TO TAKE JUDICIAL NOTICE (DKT. 23)** |

　　　　The Court has before it Plaintiffs' Motion for Judicial Notice (Dkt. 23) and Defendants' Motion to Dismiss. (Dkt. 20.) In the interest of avoiding delay, and because the Court conclusively finds the decisional process would not be significantly aided by oral argument, the pending motions will be decided on the record without oral argument. Dist. Idaho L. Rule 7.1(d). For the reasons that follow, the Court will grant Plaintiffs' Motion for Judicial Notice, and will recommend Defendants'[1] motion to dismiss be denied.

---

[1] Jeffery Podesta is named individually and as the agent of Street Search, LLC, which is also a named defendant. Both defendants are collectively referred to as Podesta. The two Plaintiffs in this case, Eric Clark and his law firm, Clark & Associates, PLLC, are collectively referred to as Clark.

**REPORT, RECOMMENDATION, AND ORDER—1**

# BACKGROUND[2]

Plaintiff Eric Clark is a resident of Idaho and is licensed to practice law in Idaho. Plaintiff's business, Clark & Associates, PLLC, is a professional limited liability company registered in Idaho. Defendant Jeffery Podesta is a resident of New Jersey and Street Search, LLC, is a limited liability company registered in New Jersey.

This action arises out of Clark's legal representation of Podesta in an Idaho state court action in which Podesta was a named party.[3] In September of 2010, Podesta contacted Clark regarding representation. In the initial interview between Clark and Podesta, prior to signing any agreement, Podesta described the case to Clark. Podesta contended he had an arrangement with Robert Coleman, a plaintiff in the action, regarding fifty percent ownership of a hedge fund, describing the value of his share of the hedge fund as approximately five million dollars. Coleman had filed suit in Idaho, asserting Idaho jurisdiction was proper, and seeking a declaratory judgment that no such agreement with Podesta existed. The state court had entered a default judgment in favor of Coleman.

Podesta sought Clark's representation to set aside the default judgment, and if default was set aside, to pursue a defense and file counterclaims against Coleman in the state court action. Podesta explained to Clark that he did not have funds to pay Clark's hourly fee, due in substantial part to alleged fraud by Coleman. Clark asked Podesta if he

---

[2] For purposes of Podesta's motion to dismiss, this background section accepts as true the allegations raised in Clark's Complaint and the uncontroverted allegations in the affidavits filed with the instant motion. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). The Court considers any disputed material facts in the light most favorable to Clark. *Id.*

[3] *See Profits Plus Capital Management, LLC, et al v. Podesta, et al,* Case No. CV OC 1014540, filed July 22, 2010 in the District Court of the Fourth Judicial District of the State of Idaho.

**REPORT, RECOMMENDATION, AND ORDER—2**

had ever been named as a defendant in any civil or criminal proceedings regarding

securities violations or fraud—Podesta assured Clark that he had not been involved in

any such cases. Based on this information, Clark agreed to represent Podesta on a partial

contingency fee basis. The agreement signed on January 10, 2011, [4] included the

following language:

> Prior to settlement or completion of trial, Attorney may either withdraw
> with Clients' consent or upon reasonable notice to Clients, for good cause,
> including, but not limited to, breach of Clients' obligation to timely pay
> attorneys fees or Clients' failure to cooperate with Attorney regarding a
> material issue in this case.[5]

(Pl.'s Declaration in Opp. to Def.s' Mot., Dkt. 22-1, Ex. 1. p. 1-2.)

The parties were scheduled to mediate in January of 2012. Just prior to mediation,

plaintiffs in the state lawsuit requested financial records of Podesta's past earnings. Upon

inspection of Podesta's financial records, Clark discovered that Podesta was earning a

substantial monthly income. He also learned that the value of the hedge fund in question

was likely closer to the one to two million dollar range, rather than the five million dollar

range Podesta previously represented.

During the mediation, Coleman offered to settle the case notwithstanding no

written agreement existed between Podesta and Coleman regarding the hedge fund.

---

[4] It is not clear in the record why the parties waited until January of 2011 to sign the initial partial contingency fee agreement.

[5] Pursuant to the incorporation by reference doctrine, the Court's consideration of the initial written partial contingency fee agreement referenced in the Complaint and attached to Plaintiff's Declaration in Opposition to Defendants' Motion to Dismiss (Dkt. 22-1) does not convert the motion to dismiss into a motion for summary judgment. *See  Knievel v. ESPN*, 393 F.3d 1068, 1077 (9th Cir. 2005) (The incorporation by reference doctrine "permits [a Court] to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading.") (internal quotations omitted).

**REPORT, RECOMMENDATION, AND ORDER—3**

Clark, Podesta's co-counsel,[6] and the mediator advised Podesta it would be wise to accept the settlement offer, but Podesta rejected the offer. During this time, Clark indicated to Podesta that he was considering withdrawing as counsel because he found Podesta's rejection of the settlement offer unwise. Clark also expressed his concerns to Podesta that the value of the hedge fund was substantially less than Podesta initially represented. In response, Podesta made a promise to Clark to pay his accumulated hourly fees regardless of the outcome of trial, orally modifying the initial written partial contingency fee agreement. Clark continued to represent Podesta.

On February 6, 2012, the case went to trial. Over Clark's objections, the court admitted evidence offered by plaintiffs of complaints and a consent judgment from two fraud cases in which Podesta was a named defendant.[7] This was the first time Clark learned of these other proceedings. The jury's verdict was adverse to Podesta. The total hourly attorney's fees due to Clark after trial was $129,576.76, which included deductions for payments previously made to Clark by Podesta.

Podesta raised several issues on appeal, including whether the trial court erred in finding it had personal jurisdiction over Podesta and Street Search. The Idaho Supreme Court affirmed the trial court's determination that personal jurisdiction over Podesta and Street Search was proper. Specifically, the appellate court found Podesta and Street

---

[6] Podesta was represented by two attorneys in the state lawsuit. Clark served as Podesta's local Idaho counsel; the other attorney, Gary Schafkopf, was admitted *pro hac vice* in the litigation.

[7] In *MLS Enterprises v. Street Search, et al*, filed March 26, 2003 in United States District Court for the Southern District of New York, plaintiffs alleged fraud and misrepresentations in the sale of securities. Consent judgment was entered, which obligated Podesta and his companies to pay plaintiff $360,000.00 plus statutory interest. In *A&R Investment Associates, L.P. et al v. Street Search Advisors, LLC, et al,* filed on March 19, 2004, in the United States District Court for the District of New Jersey, plaintiffs alleged Podesta committed fraud in the sale of securities and common law fraud conversion. Podesta agreed to entry of a consent judgment for $881,332.14.

**REPORT, RECOMMENDATION, AND ORDER—4**

Search transacted business in Idaho and purposefully availed themselves of the privilege of conducting activities in Idaho. Podesta's other issues on appeal were also unsuccessful.

Clark represented Podesta through his appeal and billed Podesta an hourly fee for this representation pursuant to a new written fee agreement. During the appeal process, Podesta paid all but $3,000.00 of Clark's fees as they related to the appeal. Upon completion of the appeal, Clark demanded payment for his accumulated attorney's fees from trial pursuant to the oral modification of the initial written partial contingency fee agreement in addition to the remaining fees owed pursuant to the separate agreement for fees on appeal. Podesta refused to respond to Clark's demands.

Clark filed this lawsuit on October 31, 2014, in the District Court of the Fourth Judicial District of the State of Idaho to recover his accumulated attorney's fees, prejudgment interest, and attorney's fees and costs in this matter. Clark asserts three state-law causes of action: (1) fraud in the inducement; (2) breach of the orally modified partial contingency fee agreement; and (3) breach of the written agreement for fees on appeal.[8] On January 8, 2015,[9] Podesta timely removed the case to this Court on the grounds of diversity jurisdiction.

On February 25, 2015, Podesta filed a motion to dismiss under both Rule 12(b)(2) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. He also argues dismissal is proper on public policy grounds. Finally, he challenges Clark's claim for attorney's fees as they relate to this matter.

---

[8] Three agreements exist in this case: (1) the initial written partial contingency fee agreement; (2) the orally modified partial contingency fee agreement; and (3) the written agreement for fees on appeal. Clark alleges Podesta breached agreements (2) and (3).

[9] Podesta was served by notice of publication and did not receive notice of the Complaint until January 2, 2015.

**REPORT, RECOMMENDATION, AND ORDER—5**

In his response to Podesta's motion, Clark filed also a Declaration. Attached to the Declaration were two exhibits: (1) the initial written partial contingency fee agreement; and (2) the motion and order granting admission *pro hac vice,* filed and entered in the Idaho lawsuit. In a separate motion, Clark requests the Court take judicial notice of the motion and order filed and entered in state court. (Dkt. 23.) Podesta, in his reply brief, requests the court strike the Declaration and the exhibits attached thereto. The Court first addresses Plaintiffs' motion.

## PLAINTIFF'S MOTION TO TAKE JUDICIAL NOTICE (DKT. 23.)

In his Motion for Judicial Notice, Clark requests the Court, pursuant to Federal Rule of Evidence 201, to take judicial notice of two documents attached as exhibits to the Declaration filed in opposition to the motion to dismiss: (1) the Motion for *Pro Hac Vice* Admission filed in *Profits Plus Capital Mgmt. v. Podesta, et al*, 2012 WL 11891551 (4th D. Idaho June 8, 2012) (Dkt. 22-2, pp. 4-7); and (2) the Order granting motion for *Pro Hac Vice* Admission entered in *Profits Plus Capital Mgmt.* (Dkt 22-2, pp. 1-3.) Without citing any authority, Podesta simply requests the Court deny Clark's motion and strike these documents from the record.

Federal Rule of Evidence 201 authorizes a court to take judicial notice of adjudicative facts so long as any such fact is "not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction, or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

**REPORT, RECOMMENDATION, AND ORDER—6**

The Court finds the motion and order for admission *pro hac vice* meet the criteria for judicial notice in that the facts can be readily determined from the source—the Idaho trial court docket—whose accuracy cannot reasonably be questioned. Accordingly, the Court will grant the motion and will notice the fact that Podesta had representation by Clark and co-counsel in *Profits Plus Capital Mgmt. v. Podesta, et al.*[10]

## REPORT

## DEFENDANT'S MOTION TO DISMISS (DKT. 20.)

### I.    Motion to Dismiss for Lack of Personal Jurisdiction

In his motion to dismiss, Podesta argues his only relationship to Idaho is his involvement in the underlying Idaho state lawsuit and alleges he was "forced" to hire Clark to represent him in that lawsuit. He contends this singular contact with Idaho is insufficient to establish personal jurisdiction.[11] Clark's response alleges that Podesta's contacts are sufficient to establish personal jurisdiction. Specifically, Clark relies upon both the Idaho Supreme Court's conclusion, which established Podesta and Street Search "transacted business" in Idaho, and his attorney client relationship with Podesta and Street Search to support his argument that Podesta has sufficient minimum contacts with Idaho. In addition, he argues Podesta made false statements to Clark, an Idaho resident, while Clark was in Idaho, and that the harm from those statements occurred in Idaho.

---

[10] Notwithstanding Podesta's request to strike the Declaration of Clark (and attached exhibits) contained within his reply brief is not before the Court as a separate motion, the Court declines to strike the Declaration and exhibits. Podesta's request is moot in light of the Court's granting Clark's request for judicial notice and the propriety of the Court's consideration of the written partial contingency fee agreement as noted in footnote 5, *supra*. Whether the documents are material to these and further proceedings will be determined as appropriate.

[11] As part of his personal jurisdiction argument, Podesta also argues that Clark's Complaint fails to plead facts to support personal jurisdiction pursuant to the pleading standard set forth in *Twombly/Iqbal*. However, the standards set forth in *Twombly/Iqbal* are not the proper standards the Court relies upon to determine personal jurisdiction. The Court instead will analyze Podesta's personal jurisdiction defense under Fed. R. Civ. P. 12(b)(2) and relevant case law.

These facts, Clark argues, allow the Court to exercise personal jurisdiction over Podesta consistent with due process.

### A. Standard of Law Applicable to Rule 12(b)(2) Motions

Faced with Podesta's motion to dismiss under Rule 12(b)(2), Clark has the burden of proving personal jurisdiction over Podesta is appropriate. *Boschetto v. Hansing,* 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as here, Clark's motion is based on written materials rather than an evidentiary hearing, Clark need make only a prima facie showing of jurisdictional facts to avoid dismissal of his Complaint. *See Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995).

The Court must take Clark's uncontroverted allegations as true and resolve in his favor any conflicts between the parties over statements in the affidavits. *See Dole Food Co.,* 303 F.3d at 1108. However, where Podesta offers evidence in support of his motion, Clark may not simply rest on the bare allegations of his complaint. *See Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.,* 551 F.2d 784, 787 (9th Cir. 1977). Instead, Clark must come forward with facts, by affidavit or otherwise, in response to Podesta's version of the facts.

Because no federal statute governs personal jurisdiction in this case, the Court applies the law of the forum state, Idaho. *See Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004). This Court previously has observed Idaho's long-arm statute, Idaho Code § 5–514, would permit broader jurisdiction than is allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution. *Wells Cargo, Inc. v. Transport Ins. Co.,* 676 F.Supp.2d 1114, 1119 n. 2 (D. Idaho 2009) (citing *Smalley v. Kaiser,* 950 P.2d 1248 (Idaho 1997)). Thus, the inquiry under Idaho's long-arm statute

REPORT, RECOMMENDATION, AND ORDER—8

collapses into the due process analysis, and the Court need look only to the Due Process

Clause to determine personal jurisdiction.

   The exercise of personal jurisdiction over a defendant comports with due process

only if the defendant "has 'certain minimum contacts' with the relevant forum 'such that

maintenance of the suit does not offend traditional notions of fair play and substantial

justice.'" *Yahoo!, Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199,

1205 (9th Cir.2006) (en banc) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 315

(1945)). " Unless a defendant's contacts with a forum are so substantial, continuous, and

systematic that the defendant can be deemed to be 'present' in that forum for all

purposes, a forum may exercise only 'specific' jurisdiction—that is, jurisdiction based on

the relationship between the defendant's forum contacts and the plaintiff's claim." *Id.*

   A three-prong test governs the specific jurisdiction analysis:

   (1) The non-resident defendant must purposefully direct his activities or
   consummate some transaction with the forum or resident thereof; or
   perform some act by which he purposefully avails himself of the privilege
   of conducting activities in the forum, thereby invoking the benefits and
   protections of its laws;
   (2) the claim must be one which arises out of or relates to the defendant's
   forum-related activities; and
   (3) the exercise of jurisdiction must comport with fair play and substantial
   justice, i.e. it must be reasonable.

*Id.* at 1205–06 (quoting *Schwarzenegger,* 374 F.3d at 802). Clark has the burden of

satisfying the first two prongs. *Menken v. Emm,* 503 F.3d 1050, 1057 (9th Cir. 2007). If

Clark does so, Podesta has the burden to "'present a compelling case' that the exercise of

jurisdiction would not be reasonable." *Id.* (quoting *Schwarzenegger,* 374 F.3d at 802). In

other words, if Clark makes a prima facie showing on the first two prongs, dismissal is

appropriate only if Podesta carries the "heavy burden of rebutting the strong presumption in favor of jurisdiction." *Ballard,* 65 F.3d at 1500.

### B. Analysis

#### 1. Clark's request to apply the doctrine of issue preclusion

Clark contends the Court should apply the doctrine of issue preclusion and adopt the Idaho Supreme Court's decision affirming the trial court's conclusion that Podesta and Street Search "transacted business" in Idaho. Put another way, Clark desires to use the doctrine offensively to prevent Podesta from re-litigating the fact that Podesta and Street Search "transacted business" in Idaho. In his reply, Podesta confuses the issue of "transacting business" with the broader issue of "personal jurisdiction," and asserts this Court cannot assume personal jurisdiction in this litigation simply because the state court exercised personal jurisdiction over him and Street Search.

Offensive non-mutual issue preclusion applies where: (1) the issue sought to be litigated is sufficiently similar to the issue presented in the earlier proceeding and sufficiently material in both actions to justify invoking the doctrine; (2) the issue was actually litigated in the first case; and (3) the issue was necessarily decided in the first case. *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 775 (9th Cir. 2003).

Here, the Idaho state trial court found, and the Idaho Supreme Court affirmed, that Podesta and Street Search were "transacting business" in Idaho—one of the very issues contested by Podesta in his motion to dismiss. *Profits Plus Capital Mgmt., LLC,* 156 Idaho at 879, 332 P.3d at 791. The issue is material in this action as it is both persuasive and highly relevant to the contested issue of this Court's personal jurisdiction over

**REPORT, RECOMMENDATION, AND ORDER—10**

Podesta and Street Search. The issue of whether Podesta "transacted business" in Idaho was litigated by the parties in the first case and affirmed by the highest Idaho state court. *See Id.* Accordingly, issue preclusion applies and Podesta is precluded from re-litigating the fact that Podesta and Street Search "transacted business" in Idaho during the time period covered by the Idaho Supreme Court's decision—May of 2008 through July of 2010.

The Court now will conduct its own determination of personal jurisdiction as explained below. *See Davis v. Metro Prods., Inc.*, 885 F.2d 515, 519 (9th Cir. 1989) (Personal jurisdiction is a "matter that must be independently determined by the federal court.").

### 2. Purposeful Availment and Direction

The first prong of the specific jurisdiction test focuses on "the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts." *Menken,* 503 F.3d at 1058. It "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo!,* 433 F.3d at 1206. These requirements ensure a nonresident defendant will not be "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (internal quotations and citations omitted). But, "[s]o long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Id.* at 475 n. 18 (quoting *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223 (1957)).

REPORT, RECOMMENDATION, AND ORDER—11

In analyzing the first prong, the United States Court of Appeals for the Ninth Circuit distinguishes between cases sounding in contract and cases sounding in tort. In contract actions, the court must ask whether the "defendant purposefully avails itself of the privilege of conducting activities or consummates a transaction in the forum, focusing on activities such as delivering goods or executing a contract." *Yahoo!,* 433 F.3d at 1206 (internal quotations omitted). In tort actions, the court's inquiry focuses on whether the defendant purposefully directed tortious conduct at the forum. *Id.* Because Clark's causes of action sound in both contract (breach of contract) and tort (fraudulent inducement), the Court will analyze both purposeful availment and purposeful direction.

a. Purposeful Availment

Podesta contends his only contact with Idaho was his involvement in the underlying state lawsuit. He also emphasizes that he was forced to hire Clark, an Idaho attorney, to represent him in the underlying lawsuit. These contacts, Podesta argues, are insufficient to establish personal jurisdiction. The Court disagrees.

The United States Supreme Court has emphasized the need for a "highly realistic"—as opposed to a rigid or formalistic—approach to personal jurisdiction in contract cases. *Burger King,* 471 U.S. at 479. This approach recognizes that a "contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Id.* (internal quotations omitted). For that reason, it is well-established that "an individual's contract with an out-of-state party *alone"* does not give rise to sufficient minimum contacts. *Id.; see also Boschetto,* 539 F.3d at 1017 (same). Rather, the defendant "must

have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state," *Boschetto,* 539 F.3d at 1017 (internal quotation marks and citation omitted), considering factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties actual course of dealing." *Burger King,* 471 U.S. at 479.

The Supreme Court in *Walden v. Fiore* reaffirmed two guiding principles to determinations of purposeful availment.134 S.Ct. 1115, 1122 (2014). First, the Court underscored the "defendant-focused" nature of the minimum contacts inquiry. *Id.* Sufficient contacts cannot be established merely by showing the plaintiff's contacts with the forum state. *Id.* Second, the analysis must look to "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* The Court went on to explain that, although the defendant's physical presence in the forum is not necessary, entry into the forum—"through an agent, goods, mail, or other some means—is certainly a relevant contact." *Id.* (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 773–74 (1984)).

In this case, regardless of why Podesta initiated his relationship with Clark, the record establishes that Podesta and Street Search had transacted business in Idaho prior to Podesta hiring Clark to represent himself and Street Search. Specifically, the Idaho Supreme Court held:

> This case arises out of a claimed ownership interest in a company whose principal place of business is Idaho and the alleged consideration for that ownership interest are the very services Podesta performed that constitute the transaction of business in Idaho.

*Profits Plus Capital Mgmt.*, 156 Idaho 873, 883, 332 P.3d 785, 795 (2014), *reh'g denied* (Sept. 15, 2014).

Moreover, additional contacts with Idaho exist by virtue of Podesta and Street Search's contractual relationship with Clark, an Idaho resident. Podesta contacted Clark, an Idaho attorney, to discuss the prospect of Clark representing him and defending his business interests in Idaho. Podesta retained Clark as counsel to defend his business interests in Idaho and in litigation filed in Idaho state court.[12] After trial in the state court action, Podesta sought Clark's continued representation on appeal and Podesta made partial payments to Clark in Idaho for costs and attorney's fees for his appeal.

This relationship between Podesta and Clark in Idaho lasted well over three years, until the appeal was denied. Podesta's decision to contract with Clark in Idaho created an ongoing relationship with Idaho. These collective facts and circumstances are sufficient to establish Podesta purposefully availed himself of the privileges of conducting business, invoking the benefits and protections of Idaho's laws. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986)("[I]f the defendant directly solicits business in the forum state, the resulting transaction will probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws."). *See also Hirschkop & Grad, P.C. v. Robinson*, 757 F.2d 1499, 1503 (4th Cir. 1985) (An ongoing relationship between an attorney and his out of state client satisfied the minimum contacts requirement and further supported a finding of personal

---

[12] And, as pled in the Complaint, Podesta reached out to Idaho with the alleged intent to fraudulently induce an Idaho resident into the initial partial contingency fee contract.

REPORT, RECOMMENDATION, AND ORDER—14

jurisdiction over the out of state client in the forum state in which the attorney was a resident.).

### b. Purposeful Direction

Clark has made also a prima facie showing that Podesta purposely directed intentionally tortious conduct at Idaho. In analyzing specific jurisdiction in the context of intentional torts, courts in the Ninth Circuit apply the "effects" test set forth by the Supreme Court in *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). *See also, Yahoo!,* 433 F.3d at 1206. The "effects test" is established by satisfying the following elements:

> (1) the defendant committed an intentional act; (2) the act was expressly aimed at the forum state; and (3) the act caused harm that the defendant knew was likely to be suffered in the forum state.

*Love v. Assoc. Newspapers, Ltd.,* 611 F.3d 601, 609 (9th Cir.2010). As the Supreme Court recently reaffirmed, *Calder'* s "effects" test is met when "intentional conduct by the defendant. . .creates the necessary contacts with the forum." *Walden,* 134 S.Ct. at 1123.

Here, the Complaint sets forth that Podesta contacted Clark in Idaho for the purpose of seeking legal representation of himself and Street Search in Idaho. During this contact, Podesta allegedly made false misrepresentations, which induced Clark to agree to enter into a contract with Podesta for representation in Idaho. Podesta's allegedly false misrepresentations directed at Idaho form the basis of Clark's fraudulent inducement claim. Because Podesta knowingly contracted and maintained an ongoing relationship with an Idaho resident, Podesta knew that his alleged tortious conduct would cause harm in Idaho. Thus, the Court finds Podesta purposefully directed tortious acts at Idaho.

### 3. Relatedness

The second prong of the personal jurisdiction analysis asks whether the plaintiff's claim arises out of or relates to the defendant's forum-related activities. *Yahoo!,* 433 F.3d at 1206. A "single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state." *Id.* at 1210 (internal quotation marks and alterations omitted). Here, Clark's contract and tort claims clearly arise from Podesta's purposeful efforts to contract and maintain an ongoing relationship with both Idaho and Clark, an Idaho resident. *See, e.g ., Hirsch v. Blue Cross, Blue Shield of Kan. City,* 800 F.2d 1474, 1480 (9th Cir. 1986) (finding contract at issue in breach of contract action constituted defendant's contact with forum and established relatedness). This is sufficient to satisfy the second prong of personal jurisdiction.

### 4.  Reasonableness

Because Clark has satisfied the first two prongs, the Court presumes the existence of specific jurisdiction is reasonable. *See Ballard* 65 F.3d at 1500. It is Podesta's burden "to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Menken*, 503 F.30 at 1057 (quoting *Schwarzenegger*, 374 F.3d at 802). In assessing the reasonableness of exercising personal jurisdiction over defendant, the Court balances the following factors:

> (1)the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the

plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.* (quoting *CE Distrib., LLC v. New Sensor Corp.,* 380 F.3d 1107, 1112 (9th Cir. 2004)).

As to the first factor, "[e]ven if there is sufficient interjection into the forum to satisfy the purposeful availment prong, the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong." *Core–Vent Corp. v. Nobel Indus. AB,* 11 F.3d 1482, 1488 (9th Cir.1993) (internal quotation and alternations omitted).

On this record, Podesta contends that his contacts with Idaho are limited to the underlying state lawsuit; however, the Court has found that Podesta's contacts with Idaho are sufficient to establish both purposeful availment and purposeful direction. Podesta "transacted business" in Idaho before and in connection with his contact with Clark. Podesta reached out to Clark, an Idaho resident, to defend his business interests in Idaho, contracting with Clark to provide legal representation in the Idaho lawsuit. Podesta continued a three year relationship with Clark in Idaho with respect to that representation. His intentional contacts with Idaho clearly were enough that he would "reasonably anticipate being hauled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Podesta does not address the remaining factors. He does not allege that litigating in Idaho would be burdensome, he does not suggest that an alternative forum would be more appropriate, nor does he suggest a conflict with the sovereignty of some other forum. These factors are at most neutral and likely unfavorable to Podesta.

**REPORT, RECOMMENDATION, AND ORDER—17**

On the other hand, Clark's choice of forum would be both convenient and efficient for Clark to litigate in Idaho. Moreover, Idaho has a strong interest in providing convenient and effective relief for its residents who suffer economic harm due to an out-of-state defendant's alleged fraudulent conduct. *See Blimka v. My Web Wholesaler, 152* P.3d 594, 599 (Idaho 2007) (noting Idaho's "increasing interest in protecting its residents from fraud committed on them from afar.").

Balancing all of the above factors, Podesta has not made a compelling showing that the exercise of personal jurisdiction would be unreasonable. Accordingly, the Court's exercise of personal jurisdiction over Podesta would not offend due process. The court will recommend Podesta's motion to dismiss for lack of personal jurisdiction be denied.

## II.    Motion to Dismiss for Failure to State a Claim

Podesta alleges that each of Clark's claims are subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. After setting forth the standard for this aspect of Podesta's motion, the Court addresses each claim individually below.

### A. Standard of Law Applicable to Rule 12(b)(6) Motions

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) will be granted when the complaint fails to state a claim upon which relief can be granted. When a reviewing a complaint under this Rule, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). However, a complaint, or portions thereof, will be dismissed if the

plaintiff cannot establish "any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007).

A complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations...but requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965. The complaint must plead "enough facts to state a claim of relief that is plausible on its face." *Id*. at 1974.

### B. Analysis

#### 1. Claim One: Fraudulent Inducement

In his motion to dismiss, Podesta alleges that the claim of fraud in the inducement, as pled in the Complaint, does not meet the heightened particularity requirements of Fed. R. Civ. P. 9(b). He contends that the Complaint merely alleges that Podesta failed to pay Clark for his services, which by itself is insufficient to establish a claim of fraud. He contends also that Clark had a business obligation to investigate whether it was wise to enter into a contingency fee agreement with Podesta. Alternatively, Podesta alleges that the fraud claim cannot survive because recovery for such a claim is barred by the economic loss doctrine. Clark responds and asserts that the complaint sufficiently identifies the nine elements of fraud under Idaho law. He also emphasizes that the Complaint specifically identified Podesta's alleged false statements.

**REPORT, RECOMMENDATION, AND ORDER—19**

Under Idaho law, a party alleging fraud must support the existence of the following elements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge about its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearers ignorance of its falsity; (7) reliance on the [representation]; (8) his rights to rely thereon; and (9) his consequent and proximate injury.

*Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 239, 108 P.3d 380, 386 (2005). Claims of fraud must be stated with particularity. Fed. R. Civ. P. 9(b).

In the Complaint, Clark pled Podesta represented to Clark, prior to Clark agreeing to representation, that Podesta did not have the financial resources to pay Clark's hourly fee; the value of his interest in the underlying action was at least five million dollars; and, he had never been involved previously in litigation involving fraud. The Complaint alleges that these three representations were false. Specifically, Clark pled that Podesta's financial records offered by opposing counsel in the previous mediation revealed Podesta was not financially insolvent. He further pled that, during the underlying mediation, he learned Podesta's value in the underlying action was likely significantly less than five million dollars. Finally, he pled that Podesta had been named as a defendant in two previous lawsuits involving fraud allegations. Clark pled that these were material representations because they formed the basis for him to accept the case on a contingency fee basis. He alleges that Podesta knew these representations were false and intended the representations to induce Clark to represent Podesta on a contingency fee basis. Finally,

**REPORT, RECOMMENDATION, AND ORDER—20**

Clark pled he was unaware of the false statements but relied on, and had a right rely on, the statements because Podesta presented himself as a well-informed businessman.

These facts as pled in the Complaint satisfy Idaho's elements for fraud by particularly supporting each element with factual circumstances of the alleged fraud itself; thus, satisfying Fed. R. Civ. P. 9(b).

Podesta argues also the claim for fraud in the inducement does not state a claim upon which relief can be granted, because purely economic recovery for fraud in the inducement is barred by the economic loss doctrine. In support of his argument, Podesta cites two Idaho cases, both of which analyzed the application of Idaho's economic loss doctrine when raised at the summary judgment stage of the litigation of negligence claims. *Stapleton v. Jack Cushman Drilling & Pump Co. Inc.*, 153 Idaho 735, 737, 742, 291 P.3d 418, 420, 425 (2012); *Aardema v. U.S. Dairy Sys., Inc.*, 147 Idaho 785, 790, 215 P.3d 505, 510 (2009).[13] These cases, however, do not support Podesta's contention that Idaho's economic loss doctrine bars the damages Clark requests in connection with the tort of fraud in the inducement.[14]

The Court is neither persuaded nor convinced that Clark's claim for fraud in the inducement is barred by Idaho's economic loss doctrine; and, therefore, the Court will recommend that Podesta's motion to dismiss the fraud in the inducement claim be denied.

---

[13] "Economic loss" as defined in these two cases is not claimed by Clark in this action.

[14] The Court, in its own research, located no Idaho legal authority to support Podesta's argument.

**REPORT, RECOMMENDATION, AND ORDER—21**

## 2. Counts Two and Three: Breach of Contract Claims

In his motion to dismiss, Podesta combines Clark's breach of contract claims and contends that Clark has not articulated any breach of contract. Specifically, Podesta contends that the Complaint fails to attach the initial written partial contingency fee contract,[15] fails to specify the parties to the initial partial contingency fee contract, fails to explain Podesta's obligation pursuant to the initial partial contingency fee contract, fails to explain how the initial partial contingency fee contract was breached, and fails to specifically itemize damages.

Clark's response emphasizes that the Complaint alleges two breach of contract claims and that both claims are sufficiently pled. Clark does not claim Podesta breached the initial written partial contingency fee agreement. Rather, he alleges Podesta breached the orally modified partial contingency fee a when, after Podesta lost the case at trial, he failed to submit payment to Clark. Clark alleges the special damages owed as a result of that breach were $129, 576.76. In addition, Clark alleges Podesta breached the new written contract for fees on appeal when Podesta failed to pay the remaining balance of $3,000.00 after completion of the appeal. These facts, Clark argues, are sufficient to survive a motion to dismiss pursuant to Rule 12(b)(6).

In Idaho, to properly plead a claim for breach of contract, a party must allege: (1) the existence of a contract; (2) breach of that contract; (3) the breach caused damages; and (4) the amount of those damages. *Mosell Equities, LLC v. Berryhill & Co.*, 154 Idaho

---

[15] Clark attached the initial written partial contingency fee agreement as an exhibit to his Declaration supporting his response to Podesta's Motion to Dismiss.(Dkt. 22-1.) However, in his reply, Podesta makes a disingenuous request that the Court strike the document.

269, 278, 297 P.3d 232, 241 (2013). The Court finds that both claims for breach of contract— the alleged breach of the orally modified partial contingency fee agreement and the alleged breach of the written contract for fees on appeal—are sufficiently pled with facts which state claims of relief that are plausible on their face.

a. Claim Two: Breach of Oral Agreement

Clark identified that the parties to the initial written partial contingency fee contract were Clark, Podesta, and Street Search, LLC.[16] Clark pled the parties initially entered into the partial contingency fee agreement but Podesta agreed to modify the agreement at mediation. The Complaint articulates facts, if proven, that would to support the existence of consideration for the modified agreement.[17] Specifically, Clark pled he forwent his contractual right to withdraw as Podesta's counsel pursuant to the initial written partial contingency fee agreement and continued his representation of Podesta, in exchange for Podesta's promise to pay his accumulated fees. He pled that that the modification obligated Podesta to pay his accumulated attorney's fees. Clark pled that Podesta breached the agreement when Podesta failed to pay Clark upon the completion of the case. Finally, Clark pled damages of $129,576.76.

The undersigned finds these facts as pled in the Complaint satisfy Idaho's elements for breach of contract and state a plausible claim of relief. Therefore, the Court will recommend denial of Podesta's motion to dismiss claim two of the Complaint.

---

[16] In a footnote in the Complaint, Clark indicated that the Defendants would collectively be referred to as Podesta.
[17] The Court need not determine at the motion to dismiss stage whether there was sufficient consideration for the modification or the new agreement between Podesta and Clark.

**REPORT, RECOMMENDATION, AND ORDER—23**

### b. Claim Three: Breach of Agreement Regarding Appeal

Clark pled the parties entered into a separate written agreement for Clark's representation of Podesta during the post judgment and appeal proceedings in the underlying Idaho state action. He alleges this agreement obligated Podesta to pay Clark's hourly fee for his representation of Podesta after trial and on appeal. Further, he pled Podesta made partial payments pursuant to this agreement, but Podesta breached the agreement when he refused to pay the remaining $3,000.00 owed to Clark.

Though perhaps not artfully pled,[18] the Complaint nonetheless alleges facts supporting a plausible claim of relief for breach of contract regarding fees on appeal. Therefore, the undersigned will recommend Podesta's motion to dismiss claim three of the Complaint be denied.

## III. Dismissal on public policy grounds

Podesta's final argument in his motion to dismiss attempts to invoke public policy. Specifically, he argues the Complaint, if allowed to proceed, contravenes Idaho Rule of Professional Conduct 1.2(a), which states that the client (rather than the attorney) is the sole determinator in the acceptance or rejection of a settlement offer. Podesta argues the allegations in the Complaint imply that he did not have the sole decision making power to accept or reject the settlement offer made during mediation in the underlying state lawsuit. According to Podesta's interpretation of the Complaint, it alleges the rejection of the settlement offer transmuted the initial partial contingency fee agreement into an

---

[18] The facts as they relate to this cause of action are not specifically articulated in the facts and allegations section in the Complaint, but instead are raised in footnote 3 and in the heading under cause of action 3. The Court looks to substance over form and concludes that sufficient facts are set forth in the Complaint to state a claim of relief.

obligation to pay Clark's hourly attorney's fees, violating Idaho Rule of Professional Conduct 1.2(a).

The most that can be gleaned from Podesta's argument is that he is asserting Clark violated a rule of professional conduct during his representation of Podesta. But, Podesta is not requesting that the Court determine whether Clark's conduct violated the rules of professional conduct.[19] Rather, without citing any legal authority, he requests the entire Complaint be dismissed. Although Podesta may be able to develop and present facts and law to support this contention as a defense, his argument regarding the rules of professional conduct is not ripe for the Court's determination. Accordingly, the Court will recommend that Podesta's motion to dismiss the Complaint on public policy grounds be denied.

## IV. Attorney's Fees

Podesta contends Clark is not entitled to attorney's fees and asks the Court to strike the prayer for attorney's fees in the Complaint. Clark alleges he is entitled to attorney's fees pursuant to I.C. §§ 12-120(3) and 12-121. However, this issue is not ripe for consideration. I.C. § 12-120(3) provides, in relevant part, "the prevailing party shall be allowed reasonable attorney's fees to be set by the court…." Whether Clark will prevail in this action and be entitled to an award of attorneys fees under the statute, as alleged, cannot and will not be determined at this time. Therefore, the Court will recommend denial of this aspect of the motion and that all issues regarding attorney's

---

[19] *See generally In re Girardi*, 611 F.3d 1027, 1035 (9th Cir. 2010) (In addition to case law, the court has authority to "consider codes of professional conduct in determining whether an attorney's conduct falls below the standards of the profession," in context with an affirmative defense or in context of a motion for summary judgment.).

fees, as they relate to this litigation, be reserved for the Court to determine at the appropriate time.

## RECOMMENDATION

Based on the foregoing, the Court being otherwise fully advised in the premises,

**IT IS HEREBY RECOMMENDED that:**

1)  Defendant's motion to dismiss (Dkt. 20) be **DENIED**.

Written objections to this Report and Recommendation must be filed on or before **September 28, 2015**, pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho. L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED:**

1)      Plaintiff's Motion for Judicial Notice (Dkt. 23) is **GRANTED**.

Dated: September 14, 2015

Honorable Candy W. Dale
United States Magistrate Judge